Good morning, Your Honors. Eric Slepian on behalf of Mr. Barela. I'm going to attempt to reserve three minutes of my time for rebuttal. This is a Social Security claim. I know the Court's familiar with these type of matters. The issues that we have concern the administrative law judge's denial of benefits to Mr. Barela. In reviewing this matter, there are different standard of reviews that I'd briefly like to go over. First is this Court's review. This Court's review of the matter is de novo. So the Court gets to look at the decision of the ALJ. That's what we're concerned about here today. There are two major issues. Alito What happened to the review for substantial evidence in the record? Michael Astrue Both issues were raised. There's an issue concerning whether there's legal error and whether substantial evidence supports the decision of the administrative law judge. So, and I'll be talking about that when we get to this. Breyer But you're not suggesting that we completely reweigh the facts and redetermine credibility and that sort of thing, are you? Michael Astrue Absolutely not. Breyer Okay. I just want to make sure we've got the standards. Go ahead. Kagan Well, maybe, though, you know, the other thing is, too, that his disability claim seems to be a little bit of a moving target. So while you're going through this, it seems to have changed over the course of the administrative and judicial proceedings. You know, exactly what conditions caused Mr. Barilla to be disabled? Michael Astrue There are a number of conditions, and we have to look at the combination of those impairments. He has a very severe anxiety disorder, which has been under treatment for this entire period of time, even prior to 2004. Kagan Well, you were initially sort of claiming more physical, and then it became more mental at the end? Or what was the MI? Michael Astrue The position throughout the entire proceedings was that it was both physical and psychological impairments that precluded sustained work. The records that we submitted included the value options and the NovaCare evaluation showing how severe the anxiety disorder was. We also submitted the MRI evidence, the nerve conduction studies, showing the physical. Kagan So did the ALJ make an adverse credibility finding determination as to Mr. Barilla? Michael Astrue The ALJ did err in determining credibility. Kagan Okay. But the ALJ did make an adverse credibility? Michael Astrue Absolutely. Kagan Saying that his he wasn't as disabled as he was saying. So what's your best argument to support reversing that? Michael Astrue The best argument would have to go to the opinion of the State Agency psychologist, who rendered an opinion that Mr. Barilla's anxiety disorder would not allow him to sustain an ALJ. Kagan So are you talking about Babbage, or who are you talking about? Michael Astrue I'm talking about Dr. Babbage. Roberts So don't you have a completely contrasting opinion from Dr. Cimino? Michael Astrue No, I do not. Dr. Cimino never rendered an opinion as to what Mr. Barilla could and could not do. Roberts Well, didn't Dr. Cimino indicate that Mr. Barilla's anxiety symptoms were well controlled? Michael Astrue Yes. Dr. Cimino And isn't that in contrast to Dr. Babbage, who said Mr. Barilla's anxiety symptoms were such that he couldn't hold work? Michael Astrue Absolutely not. They're actually two very consistent statements. If you look at the treatment records from the treating psychologist, Dr. Cimino, he lists the GAF as 65. He notes that there are times there are fluctuating symptoms. The prescription of Zoloft went from 50 milligrams to 100 milligrams to 150 milligrams, back down to 100 milligrams. And the anxiety is not an everyday thing. And that's really the complicating factor in adjudicating the claim, is that an individual like Mr. Barilla, who suffers from an anxiety disorder, doesn't have those symptoms all the time. The question is how frequently does he have it and how it would interfere. Dr. Cimino What if you have migraine headaches and you get one migraine headache a year? Does that mean you can't work? Michael Astrue No. In fact, there's social security rules on migraine headaches. Dr. Cimino But if you have an opinion that it's under control, meaning that's not to say that there might not be a day here or there or whatever, that he's got to change his medication a bit, why isn't that it's under control a contrast to what Dr. Babbage said, who is really a consulting as opposed to a treating physician? Michael Astrue Well, doctor, well, the answer to your question is because the anxiety attacks are occurring once to twice a week. And they last for an hour to an hour and a half. And considering Dr. Barilla But didn't the ALJ also say that Dr. Babbage's testimony was internally inconsistent? Michael Astrue The judge did say that. I don't believe that to be an accurate interpretation of Dr. Babbage's report. Kagan Is it one interpretation of it? Is it you know, that's the thing is when you're saying do we re-weigh the testimony, if it's one interpretation, that's that, you know, that ties our hands a bit. Michael Astrue I understand what you're saying, Judge Callahan. And I would say it's I mean, the judge interpreted it. I can't say the judge didn't interpret it. But the judge is just absolutely wrong. And the evidence doesn't support what the ALJ says the report says. So if you go through the report, I can point out where the judge is simply wrong. I think she attempted to interpret it, but she just didn't get it right. Alito But isn't the standard of review one that requires us to look at the report, look at the judge's articulation, and ask whether any reasonable factfinder could have so concluded? Or to put it another way, we would have to be convinced that it was impossible for a reasonable factfinder to render that determination on the basis of this record for you to prevail. Michael Astrue That would be an incorrect application of how we're supposed to review the decision of the administrative law judge. When we have an opinion from a medical source, and in this case it's a consulting medical source, Social Security regulations state that this opinion is a qualified medical expert whose opinion is entitled to special consideration under the rules. Scalia Don't doubt that. Don't doubt that the source is a medical source. The question is, is there conflicting evidence in the record? And if there is, isn't the don't we rely on the ALJ to sort out that conflicting evidence? I don't doubt that Dr. Babich is a qualified medical source. But as I read Dr. Cimino's records, at one point he ruled out anxiety disorder. At another point, just a couple months later, Mr. Barella said he was doing fine, complained of depression, but said his anxiety was controlled. Michael Astrue Right. But then the anxiety disorder was rediagnosed. And that's the whole problem with the anxiety disorder. Scalia Rediagnosed by whom? Michael Astrue By Dr. Cimino. Well, I don't see that here. What I see Dr. Cimino doing is saying you're reporting anxiety, so I'm going to increase your clonopin, clonopin. And then a couple months later, Mr. Barella says he's doing fine on the medication. This is in April and May of 2008. I mean, we can pick out snippets here and there when Mr. Barella has problems and snippets when doctors say he's doing fine. But the real question is, don't we rely on the ALJ to sort those out and come to a conclusion? And absent no substantial evidence that would support that, aren't we required to defer to the ALJ? Michael Astrue No. If there's an error of law, then we do not get to defer. Scalia Well, what's the error of law here? That's what I'm having trouble with. Michael Astrue Well, there are two. Right now we're discussing, and I'll stay on point, the weight given to the opinion of an acceptable medical source. You know, one, I don't see any conflict in this opinion. The medical source says he has a severe anxiety disorder. When he's anxious, he's going to have difficulty sustaining memory and concentration, persistence and pace. And I find over the course of a work week or a work month that the sustainability of employment is markedly impaired. Scalia So your point as to Dr. Babich is that there's no contrary evidence. Michael Astrue There is nothing contrary. If we were to conclude there were contrary evidence, this would turn into a factual issue, would it not? Scalia If there was a conflict within the opinion, a true conflict, then you still have to weigh that medical opinion to determine whether it's sufficient to go one way or legally to go one way or the other. Kagan Where in the record can you point to that the ALJ said, I am giving no weight to Dr. Babich's opinion? Michael Astrue The judge does not say that. The judge picks it. Kagan Okay. That would be an error of law, right? Michael Astrue Absolutely. Well, yes, unless she had substantial reasons for doing so. Roberts We've been peppering you, so tell us what your second. I want to make sure you get a chance to tell us what your second legal error is. Michael Astrue Well, the second one has to go with the manner in which they weighed Mr. Borrella's subjective complaints. It's a clear and convincing standard. If these reasons set forth by the ALJ are not clear and convincing, then the court has to vacate the decision of the ALJ. It's a procedural error. And what I'd really like to do is go through some of the things that the ALJ writes to try to explain her opinion just to show you. Kagan I hate to nitpick on you, but when you say things like the way it was weighed to that, that right there tells me you're asking us to re-weigh the evidence. Michael Astrue No, I'm not asking you to re-weigh the evidence. I'm asking you to ensure that the ALJ set forth clear and convincing reasons to find Mr. Borrella not fully credible. Scalia Is clear and convincing really the standard? I know some of our cases say it, but Bunnell, which was the Enbank case that dealt with this, talked about specific reasons in the record. Is there a difference between being specific and clear and convincing? Bunnell says that an ALJ must articulate specific and legitimate reasons for making a decision. The Borrella doesn't talk about the standard. So it's as if I said to you, you know, X party has the burden of proof in this case. We don't know if that burden is an abuse of discretion, preponderance of the evidence, you know, and all the other cases. If you look pre-Bunnell, we have cases like Gallant that say that it's in order to reject, you need to set forth clear and convincing reasons, and then we have post-Bunnell. We have Smolin. And, I mean, there's like a hundred cases that address this issue. And Bunnell is the only one that doesn't. They talk about the duty, but not the level. Scalia Well, I guess I asked my question poorly. Is it clear and convincing reasons, or is the burden clear and convincing? I think those two are kind of different. You think in terms of burden of proof, proof of clear and convincing burdens or proof going like this, but having your reasons being clear and convincing is, I think, a different notion. Bunnell In order for this Court to affirm the decision of the ALJ, the Court must find that the ALJ's rationale sets forth clear and convincing reasons to substantiate her credibility finding. It's a burden of proof. Alito I read Bunnell differently. What I read Bunnell to say is that it is incumbent upon the ALJ to articulate in a manner sufficient to permit the court of appeals to review the decision so that there is enough specificity in the ALJ's decision so that we can understand how the ALJ reached the conclusion that he did. That's different from saying that they must be clear and convincing reasons, because you seem to be elevating the standard above substantial evidence in the record to support the determination, which I think is the overarching statutory standard which all of our cases acknowledge, do they not? Bunnell All of the cases acknowledge that an individual's symptoms are to be credited if they're correlated with the medically determinable impairments, absent the ALJ citation of, and it depends whether there's findings of malingering or not malingering, as to whether we're going to say it's clear and convincing reasons required by the ALJ. Alito Well, let me give you one specific. It seems to me that one of the reasons that the ALJ credited Dr. Simone over Dr. Babich was the fact that Simone was a treating psychologist over a period of time, whereas Babich evaluated your client on a single occasion. Now, that seems to me to be a specific enough articulation of one reason why the ALJ gave greater weight to Dr. Simone than to Dr. Babich's opinion. Is that improper? Bunnell Had Dr. Simone gave an opinion that said, I believe my patient would be able to sustain the burden of a normal work day and work week, absolutely that's proper. Alito But you've got statements in the treatment records by Dr. Simone indicating that your client was doing fairly well on the basis of whatever modality he was pursuing to treat his anxiety. Bunnell Right. And if you look at the longitudinal records here, we have an evaluation from Value Options, very similar to Dr. Babich, from NOVA, very similar to Dr. Babich. And then when we say doing well, what does doing well mean? At one point, you know, he was having anxiety with agoraphobia. He could barely leave his house. They prescribed him medications. His anxiety is lessened to once to twice a week with symptoms lasting one and a half hours at a time. He is doing well. He just cannot sustain an 8-hour work day or work week. Here and there, he can. He even tried. If you look at the record, he tried to work, and the administrative law judge acknowledges it and finds it's an unsuccessful work attempt. Alito You've got 30 seconds left. I'll give you a little more time on rebuttal, but let's hear from the Commissioner. Thank you. Good morning. May it please the Court, I'm Jennifer Randall on behalf of the Commissioner for Social Security. Borrella is trying to isolate specific pieces of evidence in the record, but the ALJ was charged with considering the record as a whole. And looking at the record as a whole, there is substantial evidence to support the ALJ's finding of non-disability. Well, let's just sort of kick off on what counsel for Mr. Borrella said last. If Mr. Borrella experiences two panic attacks per week, and those attacks generally last over an hour, how is it possible for him to work consistently 40 hours per week? Well, Your Honor, first of all, we have conflicting evidence as to what he was actually experiencing. And the ALJ was responsible for resolving those conflicts in the record. Well, he's now arguing that he experienced two panic attacks a week for up to 90 minutes at a time. Dr. Babich was under the impression that he was alleging anxiety throughout much of the day, as you can see in her report at page 335 of the record. And then the ALJ was also looking at the record as a whole, found that Borrella's statements about the extent and severity of his symptoms were not credible in light of evidence that he reported that his medication reduced his anxiety and helped him stay calmer. He repeatedly exhibited intact mental functioning on examination. His treating psychiatrist, Dr. Sunino, repeatedly and consistently over a period of several months, assigned global assessment of functioning ratings indicating that he had only mild symptoms and that he was generally functioning pretty well. So in light of all of this evidence of his functioning, the ALJ discounted his subjective assertions about the severity and extent. Let me ask you a question about the evidence in this case. On the medical evidence side, as I understand it, there was a physician, I think it was Dr. Cunningham, I may be wrong, who testified that Mr. Borrella could work despite his medical problems. Was there somebody on the mental health side who testified that Mr. Borrella could sustain a work week despite his mental problems? I see Dr. Sunino doesn't quite opine as to that, where Dr. Babich does opine. Is the government, the Commissioner's burden in this case to bring on somebody who actually gives that opinion? Well, Your Honor, the ALJ is charged with making an administrative finding about residual functional capacity based on the record as a whole. And so that administrative finding doesn't have to specifically track any one medical source opinion. But in this case, we did have medical source opinions to indicate that he could work despite his mental impairments. And that's what I'm asking. One could infer from Dr. Sunino's opinion and others that Mr. Borrella could work. But did anybody actually opine on the mental health side that Mr. Borrella could work despite his impairments? Yes, Your Honor. We had reviewing State agency psychologists take a look at the record. Those psychologists not only are, you know, medical sources, but they're also experts in the area of Social Security disability. And they opined, in contrast to Dr. Babich's opinion about marked limitations in mental functioning, they opined that Borrella would have no more than moderate limitations in mental functioning and that he retained the ability to do unskilled work, which is consistent with the ALJ's finding in this case. What about Bonnell? It appears that since Bonnell, multiple panels of this circuit have held that absent a showing of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings stating clear and convincing reasons for doing so. I guess it doesn't appear to overrule Bonnell, but it does seem to perhaps expound on that decision. So what do you – what's your position about what the Ninth Circuit's done with that, and has the Ninth Circuit seemingly accepted the clear and convincing reasons test as further development of Bonnell's standard, not as a repudiation of it, or what? Well, as the Court observed earlier, I think that in Bonnell the Court was saying that the ALJ's credibility finding needs to be sufficiently specific for the Court's review. That's consistent with the regulations, which impose only a preponderance of the evidence burden during the administrative proceedings, and it's consistent with the statute, which says that the Court reviews the ALJ's decision for substantial evidence. Since Bonnell, some panels have referred to clear and convincing reasons, and it is unclear whether they were trying to elevate the standard articulated in Bonnell or if they were simply restating it in a different way, but I think that the term clear and convincing is problematic for a few reasons. First of all, it suggests a higher standard of proof even than is imposed by the regulations during the administrative proceedings and is imposed by the statute in the Court's review. Well, let's just assume for argument's sake that that's the test now in the Ninth Circuit, right or wrong. On this case, in this case, are the facts in this case strong enough that the result under clear and convincing would still, that you would still withstand that review? Yes, Your Honor. The reasons that the ALJ gave in this case would be valid under both the standard articulated in Bonnell and under the case law since Bonnell, in which some of the What does it mean, clear and convincing? Does it mean that when we look at this evidence, we have to conclude that the commissioner sustained the commissioner's burden by more than a preponderance of the evidence, by somewhere between 51 percent and whatever beyond a reasonable doubt is? Or does it just mean the reasons have to be clear? I mean, it's a confusing phrase, and I think that's why the language used in Bonnell is better and easier to follow and understand. Sometimes courts do talk about clear and convincing evidence, which isn't what the Ninth Circuit panels have stated. So we've got Smolin and Lucie, which are the cases that kind of back things up a bit? Yes, Your Honor. He used a legal term. But those cases say clear and convincing reasons, don't they? They do say clear and convincing reasons. Not clear and convincing evidence. Right. But unfortunately, I think that the phrase clear and convincing starts to create some confusion among the courts. And I think that it is unclear to use that phrase, and it does create confusion, and so I think that the standard articulated in Bonnell is more consistent with the regulations in the statute. But regardless of which standard the court supplies, the reasons articulated by the ALJ are valid and support the ALJ's capability finding. But I want to go back to Judge Callahan's question, which I probably derailed. If the standard is clear and convincing evidence as opposed to clear and convincing reasons, have you met that standard here? Oh, well, Smolin was stating clear and convincing reasons, Your Honor. It's some of the lower courts that have started talking about clear and convincing evidence. We have met the clear and convincing reasons standard in this case, and we've also met the standard articulated by the court in Bonnell. And these are the reasons that the ALJ gave. No, I tend to agree with that. Okay. I tend to at least – I understand your argument. My question is a different one. Oh. If whatever the lower courts, if you will, I like to call them district courts. Yes, sir. Have concluded with respect to clear and convincing evidence, if that's accurate, did you meet that standard in this case? Well, Your Honor, I mean, the problem with that question is that clear and convincing evidence conflicts with the statute. I understand. That's your position. And that's what I'm trying to – perhaps we've been wrong, perhaps the district courts have been wrong, but just assume for purposes of my question that that's the standard. Do you agree with your opponent that you haven't met that standard? I think the ALJ's credibility finding in this case meets all the applicable standards. I don't agree that clear and convincing evidence is applicable, however. But that's – you're still – okay. You're still dancing around. Assume that the test is clear and convincing evidence, if that's the standard of review. Does the evidence in this case, could we say, even assuming that that is that they're correct, that can the ALJ and the district court still be affirmed on this record? Your Honor, I think we do have extremely strong evidence in this case. As I mentioned earlier, Borrella is trying to isolate specific pieces of evidence in his appeal. So is that a yes or a no? Yes, we would meet that standard, I think, in this particular case. It's the I think that gives us pause. I just don't want to be seen as conceding that clear and convincing evidence is the appropriate. We understand. You've preserved your position. Thank you. My hypotheticals don't. Do you also – it also seems to be a theme that's coming up with the Commissioner is on the credit is true rule. Yes. Now, obviously, if we were to – it would appear to me if we affirmed this, we don't have to deal with the credit is true. Correct. But if we don't, then we do. If you found reversible error. And then the issue is, is it discretionary, is it mandatory, and what is our precedent? That is correct, Your Honor. And so it would appear that there does seem to be some precedent out there that says it's mandatory. There are competing lines of precedent. There are some in which, right. And so if we have to get to that issue, then we have to decide what our precedent says or how, you know, if – I think Judge Tallman was on a previous panel where it talked about it being discretionary, I think. But so – but that being said, we still, you know, we don't all like our precedent either sometimes. So, I mean, it would have to go en banc if, in fact, this Court has said that it's mandatory. Correct? That is correct, Your Honor. Can I go back to this particular case? Does the ALJ in considering the RFC in this one have to be more specific than he was in this case? Does he have to say Mr. Borrella could sit for X amount of time or could walk for X amount of time? He says, in effect, he concludes that he has mild limitations which don't impair his ability to have a job that doesn't involve lots of standing and stuff. Does he have to be more specific given the testimony in this record? I think that in this case the ALJ's decision is sufficiently specific for the Court to discern his reasoning. I don't think that the detailed function-by-function discussion demanded by Borrella is always required. Here, the ALJ made a number of very specific findings about Borrella's mental residual functional capacity. The ALJ, although the ALJ discounted Dr. Babich's opinion, the ALJ incorporated – No, on the mental side, I understand that. And I think – and my question was really focused on the physical side. Your Honor, there have been past panels that have recognized that similar residual functional capacity findings are sufficiently specific. Here, the ALJ specified no heavy lifting. Heavy is a term of art used in Social Security cases which designates specific lifting, sitting, standing, walking requirements. And then the ALJ further found that Borrella could do light jobs. Light is another term of art that comes with very specific function-by-function parameters. And so the ALJ specified that in addition to being able to do light jobs, Borrella would still need a sit-stand option. But we can discern from the ALJ's decision that the ALJ found that, you know, apart from the need for a sit-stand option, Borrella could meet the standard requirements for light work. I can see that I'm running short on time. We don't have any more questions unless you have some more questions. And so since the panel doesn't have any further questions, I would just respectfully submit, as argued in our brief, that the ALJ reasonably evaluated Borrella's credibility. The ALJ reasonably evaluated the medical source opinions in the record about Borrella's physical and mental functioning. And there's substantial evidence in the record to support the ALJ's finding that Borrella did not meet the strict standard for disability under the Act. Thank you. Thank you, counsel. Thank you. Mr. Slepin, I'll give you a minute on rebuttal. Thank you. My goal was to go through some of these credibility reasons, so I'm going to try to do it really quickly. You know, out of the gate, the judge says that there's some indication that he may be drug-seeking. But what happened was he went to his treating doctor. He was complaining of neck pain. The doctor writes, rule out drug-seeking behavior, send for MRIs and pain management. So he goes to his MRIs, he goes to pain management. They actually do surgery on his wrist. They find that he has medically documented severe impairments. And nobody says he's drug-seeking. Yet that comes up as one of our difficulties. The ALJ writes that the record doesn't support allegations of disabling pain. Well, Mr. Burrell said that he could sit a total of six hours, stand for two hours, lift about 15 pounds, needed a sit-stand option. Those are fairly consistent with a sedentary residual functional capacity. He testified that he has reduced functional capacity due to the cervical degenerative disc disease and the lumbar disc disease, which includes some encroachment into the canal. But he didn't say he was disabled as a result of it. So the judge looks at it. And so she's got this impression that's causing this decision to go a particular way. In fact, if you look at the hearing testimony itself of the vocational consultant, the ALJ writes that she accepts the answer to hypothetical number two. But look at the transcript. The judge asked hypothetical number two, and I pointed out to the judge, it was based on the opinion of Dr. Babich, and you misread it. You missed some of those limitations. And she says, counsel, you are correct. And then when they were added, the vocational consultant said no work. So the presumption at that point in time was we were not looking at this modified residual functional capacity given by the administrative law judge. She admitted that that was an incorrect hypothetical question at the hearing. Alito, you are out of time. Okay. I was trying to rush. Thank you. I gave you two minutes instead of one. I appreciate it. All right. The case just argued is submitted, and we'll give you an answer as soon as we can. Thank you both for your familiarity with the record. That's helpful to the court. Very much so.
judges: Tallman, Callahan, Hurwitz